[S. F. No. 1458.   In Bank. — May 20, 1901.]

JAMES S. ANGUS et al., Executors, etc., Respondents, and VIRGINIA FAIR, Intervener, Respondent, v. NETTIE R. CRAVEN, Appellant.

ACTION TO QUIET TITLE — AVERMENT OF FORGED DEED — DEFENDANT'S CLAIM OF TITLE AND POSSESSION — JURY TRIAL. — Where the plaintiffs are in possession, an action to quiet title, under section 738 of the Code of Civil Procedure, against a defendant who is alleged to claim under a forged deed from plaintiff's testator, is of an equitable nature; and where it appears that the defendant has never been in possession nor ousted therefrom, the equitable character of the action cannot be overthrown by the defendant's claim of title and prayer to be let into possession, either by answer or by cross-complaint. The defendant is not entitled to a jury trial of the action by reason of such claim of title and possession.

ID. — CANCELLATION OF FORGED DEED — CLOUD UPON TITLE — FRAUDU-LENT ACKNOWLEDGMENT AND RECORD — EQUITABLE RELIEF. — The cancellation of a forged deed, fraudulently acknowledged and recorded, under which the defendant claims title, and which is *prima facie* valid, by reason of the fraudulent acknowledgment and record, and operates as a cloud upon the title of the plaintiffs, is clearly of the nature of equitable relief, under section 3412 of the Civil Code; and the issues upon which such relief is based are not triable by jury.

ID. — PLEADING — ISSUES — PRAYER FOR GENERAL RELIEF. — Where the facts averred by the plaintiffs entitle them to the cancellation of the deed under which the defendant claims title, and issue is joined upon such facts, such cancellation may be decreed under the prayer for general relief, though not specifically prayed for in the complaint.

ID. — ANSWER TO CROSS-COMPLAINT — SPECIFIC PRAYER FOR CANCELLA-TION. — Where the defendant, in a cross-complaint, set up title and claimed a right of possession, and the plaintiffs, in answer thereto, set up all the facts, showing forgery of the deed under which the defendant claimed title, and specifically prayed for its cancellation, the defendant cannot claim not to have been informed of plaintiffs' claim for such cancellation prior to the trial.

ID. — ORDER OF TRIAL — LEGAL ISSUES TRIABLE BY JURY — PRIOR TRIAL OF EQUITABLE ISSUES BY COURT. — Though the defendant may set up legal title and right of possession in an equitable action, upon which a jury might properly pass, if they were to be reached for trial, yet the defendant cannot, by presenting such legal issues, oust the jurisdiction of the court first to try, without a jury, the equitable issues presented by the plaintiffs, which, if found against

the defendant, would destroy the defendant's claim of title and right of possession, as being based upon a forged instrument, which should be canceled in equity. The defendant cannot complain of the want of a jury trial, where the court finds the equitable issues in favor of the plaintiffs. It is sufficient if a jury be had when the legal issues come to trial. [Per Henshaw, J., concurring.]

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Charles W. Slack, Judge.

The facts are stated in the opinion of the court.

D. M. Delmas, Denson, Oatman & Denson, W. W. Foote, J. H. Dickinson, and A. Ruef, for Appellant.

Pierson & Mitchell, Garret W. McEnerney, Bishop & Wheeler, Charles S. Wheeler, Lloyd & Wood, Wilson & Wilson, Knight & Heggerty, and Garber, Boalt & Bishop, for Respondents.

McFARLAND, J.—This is an appeal by the defendant, Nettie R. Craven, from a judgment in favor of plaintiffs and the intervener. Appellant made a demand for a jury for the trial of "said cause," which was refused; and the only question presented on this appeal is, whether she was entitled to have "said cause" tried before a jury. Persons other than appellant were originally made defendants; but by defaults, disclaimers, etc., they disappeared from the case, and need not be further noticed, and in hereafter stating the pleadings we will treat them, for convenience, as if Mrs. Craven were the only defendant.

In considering the question above stated, it will be necessary to notice, as briefly as possible, the condition of the pleadings. The action was commenced on June 23, 1896, by a complaint which contained, substantially, these averments: James G. Fair died testate on December 28, 1894, and at the time of his death was the owner in fee, and in actual possession, of certain described lands. On the next day, his will, together with a petition for the probate thereof, was filed in the proper court; and on January 2, 1895, the plaintiffs and one Bresse, since deceased, were appointed special administrators of his estate, with very full enumerated powers. Plaintiffs and said Bresse immediately assumed their rights and duties as such administrators, and took possession of all the property of the estate,

including the premises described in the complaint, and continued to act as administrators until the death of Bresse on April 22, 1896, and thereafter respondents continued to so act. It is averred that defendant claims and pretends to have some right or interest in said described lands, adverse to the estate of Fair, and to plaintiffs as such administrators, but that said claim is false and fraudulent, and is based, in part, upon certain false and forged deeds purporting to have been executed by the said James G. Fair, deceased, in his lifetime, on the eighth day of September, 1894, which deeds purport to convey the said lands hereinbefore described to the defendant, Craven, and were recorded in the recorder's office of the city and county of San Francisco, state of California, where said lands are situated, on the nineteenth day of June, 1896. It is further averred that the defendant sets up claims and pretensions to said lands under said forged deeds, and that such claims and pretensions tend to cloud the title of the estate of said Fair, deceased, to the said premises, to impair the market value thereof, to obstruct plaintiffs' management of said premises as special administrators, to harass and annoy them in their possession thereof, and in the collection of rents therefrom, to depreciate the market value of said premises, and to thereby inflict irreparable injury upon the said estate, and upon plaintiffs as administrators thereof, and that unless restrained by the judgment of decree of the court, the said false claims and assertions will continue to injure plaintiffs as above stated. It is further averred that by a special order of the court plaintiffs are authorized to commence the action. The prayer is, that plaintiffs be decreed to be the lawful owners, in fee, of the premises, and entitled to the possession thereof; that defendant has no right, title, or interest therein, and that she and those claiming under her be forever restrained from asserting any title or interest therein, and from interfering with the possession thereof; "and for such other and further relief as may be just and agreeable to equity." To this complaint the appellant, on July 17, 1896, filed her answer. By her answer she admitted that James G. Fair, at the time of his death, was in the actual possession of the premises, and that plaintiffs were, at the time of the commencement of the action, and had been since their appointment as administrators, in the possession thereof; she denies that Fair was the owner of the premises; she admits that she claims under the deeds set up in the com-

plaint, but denies that they, or either of them, were forged or simulated, and avers that each of them is true and genuine. She avers that she is the owner, in fee, of the premises; she admits that she will continue to harass and annoy plaintiffs in the possession of said premises until they shall have recognized and yielded to her rights as owner thereof. She also filed a cross-complaint, which is, in form, what we generally call a complaint in ejectment, in which she prays for possession of the property, with damages for withholding the same. To this cross-complaint defendants filed an answer, in which they denied all the material averments in said cross-complaint.

Afterwards, the will of said Fair, deceased, by which plaintiffs were appointed executors of his estate, was admitted to probate, and letters testamentary were issued to them as such executors. Thereafter, on February 24, 1897, plaintiffs filed their supplemental complaint, in which they set up the fact that they had become executors, and restated the material averments in the original complaint, but, in addition to said averments, they averred that the claim of the defendant was based solely upon the alleged forged deeds before mentioned. The prayer was substantially the same as in the original complaint. To this supplemental complaint the appellant, Craven, filed an answer substantially the same as her former answer to the original complaint, and, in addition, filed a cross-complaint which was substantially the same as her former cross-complaint. To this cross-complaint the plaintiffs filed an answer denying its averments, and also a further and separate and distinct answer for the purpose of obtaining affirmative equitable relief. In this further answer all the facts as to the claim of defendant Craven under the two alleged forged deeds are again set up, and it is further alleged that the certificates of acknowledgment attached to said spurious deeds which entitled them to record were also false and spurious, and were not made nor attached to said deeds until long after the death of said Fair, deceased; and also, that in said forged instruments the dates, names of parties therein, and the description of the premises alleged to have been conveyed thereby, and the signature of said James G. Fair, were all written in lead-pencil writing, so that it would be within the power of any person having possession of the same to erase portions of said pencil-writing and to write therein descriptions of other

property of the deceased, and thus the outstanding of said deeds constitutes a constant menace to the interest of said estate, not only as to the property therein alleged to have been conveyed, but as to all other property of the estate; and it is prayed that the defendant, Craven, "do immediately surrender the same to this honorable court for cancellation."

Afterwards, the respondent Virginia Fair was allowed to file a complaint in intervention, in which she alleged that she was the owner of one undivided third of the lands, and alleged in detail the possession by Craven of said two deeds, and her assertion of title under them; that said deeds were forged, as averred in the former pleading, and that the certificates of acknowledgment thereto which entitled them to record were spurious, and made long after the purported date of the same, and after the death of said Fair; and she attached to her complaint copies of said alleged forged deeds, and copies, also, of the alleged spurious certificates of acknowledgment. She further alleged that the assertion of right under said false deeds and certificates was a cloud upon her title, and caused her irreparable injury; and her prayer was, that the defendant, Craven, be restrained from asserting or pretending that said deeds were valid or genuine, or from claiming any right or interest in or to said premises under said deeds; and that the court proceed to hear and determine, without a jury, the matters of equitable cognizance set forth in her complaint, and for such other and further relief as is meet in the premises and in conformity with equity. Defendant, Craven, moved to strike out this complaint in intervention, and the motion was denied. Afterwards, the court granted the motion of plaintiffs "to proceed first with the trial of the equitable issues," to which ruling defendant excepted. The court then proceeded to the trial without a jury; and having found all the material facts alleged in the pleadings of the respondents, found and decreed that the defendant, Craven, and all persons claiming through or under her, be forever enjoined "from asserting or pretending that said alleged deeds, or either of them, are or is valid or genuine, or from claiming or asserting any right or title to the said premises, or any part thereof, under the said deeds, or either of them." It was also decreed that the defendant, Craven, has no right or interest in or to any of the premises described in the complaint.

The case has been presented very fully by counsel on both

sides, and with much labor and ability; and it is not at all free from difficulty. It is argued from various standpoints,— one of which is, that the action must be treated solely as an action to quiet title, under section 738 of the Code of Civil Procedure. Taking this view of the case, it may be said that a complaint under section 738, having no averments inconsistent with the scope of that section as heretofore construed, presents, on its face, a case for equitable remedy. It seeks to have something done which a court of law cannot do. It invokes a decree in equity,—not a mere judgment at law, which, in its nature, is only for the recovery of the possession of specific real or personal property, or for damages. The purpose of the section is evidently to afford a remedy similar in character to that of the old bill of peace, but extending it to cases which the latter remedy did not reach. (See *Curtis* v. *Sutter*, 15 Cal. 259.) Courts, however, in guarding the constitutional rights to a jury trial, have repeatedly held that where the suit should have been, and in substance is, an action for the recovery of the possession of land, the right of a defendant to a jury cannot be defeated by the mere device of bringing the action in an equitable form. And so it has been held that the right to a jury is not defeated, where, at the commencement of the action, the defendant, and not the plaintiff, was in the actual possession of the premises involved; and it has also been held that where the defendant had been for a long time in the actual possession, and the plaintiff had ousted him, the plaintiff, by first bringing his action to quiet title, could not, by such inversion of parties, avoid the defendant's right to a jury, but that the action should be treated as substantially an action to recover possession. But this is as far as this court has gone in *Donahue* v. *Meister*, 88 Cal. 121;[1] *Newman* v. *Duane*, 89 Cal. 597; *Gillespie* v. *Gouly*, 120 Cal. 515; *Moore* v. *Copp*, 119 Cal. 434, and kindred cases. As was substantially said in *Donahue* v. *Meister*, *supra*, the decision of the question whether, in an action brought under section 738, either party is entitled to a jury must depend greatly upon the facts in that particular case. It has never been held by this court that an action to quiet title under the code cannot be maintained as an equitable action, where the plaintiff was, and for a considerable. period of time had been, in actual possession, and defendant

---

[1] 22 Am. St. Rep. 283.

had never been in possession, or that in such case a defendant
can overthrow the equitable character of the action by simply
answering that he has title, and praying that he, for the first
time, be let into possession.  A complaint showing that plain-
tiff is the owner of the land, and in actual possession of it, and
that defendant asserts some right or title thereto which is un-
founded, followed by an answer admitting plaintiff's posses-
sion, and not showing prior possession in defendant, seems to
present the very action contemplated by the code provision;
and, under these conditions, its continued equitable character
is not affected by the particular kind of right which the de-
fendant sets up.  Therefore, if we are to consider the case at
bar solely in the light of an action to quiet title under section
738, we do not think that, under the conditions above stated,
the court below erred in denying appellant's demand for a jury.

But, really, the action is something more than an action
under section 738, if that action be construed as limiting the
judgment to be entered to a mere general decree quieting title.
Section 3412 of the Civil Code provides that "a written instru-
ment, in respect to which there is a reasonable apprehension
that if left outstanding it may cause serious injury to a person
against whom it is void or voidable, may, upon his applica-
tion, be so adjudged, and ordered to be delivered up or can-
celed."  Relief under this section is clearly equitable, and it
could not be successfully contended that in an action brought
under it the defendant would be entitled to a jury trial.  Now,
in the case at bar the facts averred in respondents' pleadings
entitled them to relief under section 3412, and to have the al-
leged forged deeds declared to be such, and to be canceled.
The only apparent obstruction to this view is the fact that in
their complaint the plaintiffs did not expressly pray that it be
decreed that the deeds are forged, and that appellant be en-
joined from asserting any right under them, etc.,—contenting
themselves, merely, with the general prayer for "such other
and further relief as may be just and agreeable to equity."  If
respondents had put into their complaint the specific prayer
above alluded to, we apprehend that there would have been
great difficulty in making any plausible objection to the re-
fusal of the demand for a jury trial.  But section 580 of the
Code of Civil Procedure expressly provides that when there is
an answer to the complaint, the court may grant plaintiff
"any relief consistent with the case made by the complaint

and embraced within the issue." (See *Walsh* v. *McKeen*, 75 Cal. 519, 521, 522, and cases cited; *Grain* v. *Aldrich*, 38 Cal. 520;[2] *Rollins* v. *Forbes*, 10 Cal. 299; Pomeroy on Remedies, secs. 71, 580.) It is said by Pomeroy (sec. 580, *supra*), quoting from the New York court of appeals, that "the relief demanded by no means characterizes the action, or *limits* the plaintiff in respect to the remedy which he may have." In *Walsh* v. *Mc-Keen*, *supra*, the original prayer of the complaint was, merely, for a money judgment, and "during the progress of the trial" the plaintiff was allowed, against defendant's objection, to amend the prayer "so as to ask for an accounting, and for such other and further relief as might be deemed equitable and proper"; and it was held here that this was not error, although it actually changed the remedy from legal to equitable,—the court saying that "when an answer has been filed any relief may be granted to the plaintiff which is consistent with the facts stated in the complaint." In the case at bar no such amendment was necessary, for the prayer for general equitable relief was sufficient; however, in the answer to the cross-complaint the prayer was made specific, so that appellant cannot claim that she was not fully informed on the subject long before the trial.

It is said that a court of law can try questions of fraud and forgery, as well as a court of equity. Of course this is true, and it is true of any question of fact considered independently of the circumstances under which it arises. Either a court of equity or a court of law can hear and determine any issue of fact which is presented for adjudication in a proceeding properly before the court; otherwise there could scarcely be any equitable remedies. But the circumstance that either kind of court may try a question of fact has no weight in determining whether, upon a particular state of facts, the remedy is legal or equitable.

In appellant's original points and authorities it is said by counsel that her cross-complaint "was not necessary, and did not really affect the proceeding"; but in parts of their subsequent arguments they seem to claim that the action should be treated as if it had been commenced by the cross-complaint in ejectment, and that the cross-complaint and the answer thereto are the only pleadings to be considered, and that the verdict

[2] 99 Am. Dec. 423.

of a jury in favor of plaintiffs would have afforded them ample remedy at law. But, for the reasons hereinbefore given, the equitable character of the remedy sought by plaintiffs was not overthrown by the filing of the cross-complaint; and, moreover, if there had been merely a general verdict for plaintiffs, the record would not have shown the ground on which it was rendered, and, under any view, the judgment which could have been rendered on such verdict would not have been the equivalent of an equitable decree forever restraining appellant from asserting any right or interest under the forged deeds. When a party claiming under an invalid instrument would be compelled, in establishing his rights, to make direct proof of its genuineness or validity, equitable interposition, might not be necessary; but a forged deed, fraudulently acknowledged and placed on record, is admissible in evidence without further proof of execution; and, as was said in *Remington Paper Co.* v. *O'Dougherty*, 81 N. Y. 483, "When the law raises a presumption, without direct proof, of the validity of a conveyance, and its invalidity can only be made to appear by extrinsic evidence, a case is presented for the exercise of the jurisdiction of a court of equity, to compel the surrender and cancellation of the instrument as a cloud upon title."

We do not deem it necessary to consider counsel's discussion of the question whether or not the intervention of Virginia Fair was properly allowed; for the pleadings of plaintiffs fully presented the matters at issue, and her absence from the case would not have affected the disposition of the issues involved, or the substance of the decree.

The judgment appealed from is affirmed.

Van Dyke, J., and Garoutte, J., concurred.

Temple, J., dissented.

HENSHAW, J., concurring.—I concur. Defendant, in the first instance, was called upon to defend her deeds to the property, against allegations that they were spurious and forged, and should be delivered up and canceled. Upon these allegations she joined issue. These issues, and the relief under them, were of equitable cognizance. That defendant at the same time filed a cross-complaint in the nature of an action in ejectment, could not operate to oust the court in equity of the jurisdiction it had acquired. Under our system, equitable and

legal rights are determined in the same forum. It is within the discretion of the court to control the order of proof upon the issues joined. In the natural order, before defendant was entitled to a hearing upon the legal issues tendered, she must defeat plaintiffs upon the equitable issues presented by them. This was the view of the trial court, and in pursuance of it, it took to itself, as was proper, the determination of these equitable matters. The result was, that it found defendant's deeds to have been forgeries. Had it reached the opposite conclusion, then defendant might with right have insisted that the remaining issues of law be tried before a jury. But that time never arrived, and I do not concede the right of a litigant to oust a court of equitable jurisdiction in an action of purely equitable cognizance, merely by tendering additional issues which are triable at law before a jury. It is sufficient if a jury be had when those issues come to trial.

Rehearing denied.