Filed 1/20/15  SLPR, LLC v. Superior Court CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| SLPR, LLC et al., | D066192 |
| Petitioners, | |
| v. | (San Diego County Super. Ct. Nos. GIC860766-1; 37-2008-00079175-CU-OR-CTL) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| THE SAN DIEGO UNIFIED PORT DISTRICT et al., | |
| Real Parties in Interest. | |

PETITION for writ of mandate and/or prohibition challenging orders of the

Superior Court of San Diego County, Judith F. Hayes, Judge.  Petition granted in part and

denied in part.

Beus Gilbert, Franklyn D. Jeans and Tiffany E. Cale for Petitioners.

No appearance for Respondent.

Daley & Heft, Scott Noya and Less H. Roistacher for Real Party in Interest the San Diego Unified Port District.

Kamala D. Harris, Attorney General, John A. Saurenman, Assistant Attorney General, Jamee Jordan Patterson and Hayley Peterson, Deputy Attorneys General, for Real Party in Interest the State of California acting by and through the State Lands Commission.

Plaintiffs SLPR, LLC (SLPR), Ann Goodfellow, trustee of the survivor's trust of the Goodfellow Family Trust (Goodfellow), and Jerry M. Cannon and Michael S. Morris, trustees of the Sewall Family Trust (Sewall) (together Plaintiffs) filed the instant petition for writ of mandate and/or prohibition challenging orders of the trial court denying their motion for a jury trial on their quiet title cause of action and motion for leave to amend their complaint against defendants the San Diego Unified Port District (Port) and the State of California (the State) (together Defendants) in their action against Defendants arising out of damage to their bayside properties in the City of Coronado (City) allegedly caused by dredging of the San Diego Bay (Bay) and a dispute regarding the location of the boundaries between Plaintiffs' properties and the State's tideland property. In their petition, Plaintiffs contend the trial court erred by denying: (1) their motion for a jury trial on their quiet title cause of action; and (2) their motion for leave to amend their complaint. We conclude the trial court correctly denied the motion for a jury trial, but erred by denying Plaintiffs' motion for leave to amend their complaint.

2

FACTUAL AND PROCEDURAL BACKGROUND[1]

In 1931, the San Diego County Superior Court entered a judgment (Spreckels judgment) ostensibly determining the location of the boundary between real property along City's Bay shoreline owned by J.D. and A.B. Spreckels Investment Company (Spreckels) and City's public tidelands. (*SLPR I*, *supra*, D059913, at pp. 2-3.) Following completion of a project dredging the central navigation channel of the Bay (Channel), in December 2007 Plaintiffs filed a second amended complaint in federal court against Port, the United States Army Corps of Engineers (Army), and the United States Navy (Navy), alleging causes of action for nuisance, inverse condemnation, and removal of lateral support against only Port and various Administrative Procedure Act causes of action against Army and/or Navy. (*Id*. at p. 5.) In March 2008, Plaintiffs filed a separate complaint in the San Diego County Superior Court, alleging a quiet title cause of action against Port and the State and alleging nuisance, inverse condemnation, and removal-of-lateral-support causes of action against the State. (*Ibid*.) After the federal court remanded back to the San Diego County Superior Court Plaintiffs' causes of action against Defendants, the trial court consolidated the two cases. (*Id*. at pp. 5-6.)

The trial court subsequently granted Defendants' motion for summary judgment. (*SLPR I*, *supra*, D059913, at pp. 6-7.) On appeal, we reversed the judgment, concluding

---

[1] For a more complete factual and procedural background in this case, refer to our prior opinion in *SLPR, LLC v. State Lands Commission* (Nov. 29, 2012, D059913) [nonpub. opn.] (*SLPR I*), in which we reversed the trial court's summary judgment for Defendants.

there existed a triable issue of material fact on Plaintiffs' quiet title cause of action. (*Id*. at pp. 22, 30-31.) On remand of the case to the trial court, Defendants filed a motion to bifurcate trial of the action. They requested a bench trial on the issues of whether their defense of res judicata applied, based on the Spreckels judgment, to bar Plaintiffs' quiet title cause of action and, if not, where the boundaries of Plaintiffs' properties are located for purposes of their quiet title cause of action. Plaintiffs opposed the motion to bifurcate the trial, arguing they were entitled to a jury trial on their quiet title cause of action. On September 19, 2013, the trial court issued an order granting Defendants' motion to bifurcate, stating:

> "Phase I should consist of a bench trial on the determination of
> Plaintiffs' property boundaries for purposes of quieting title and
> Defendants' special defense of *res judicata* to the quiet title cause of
> action. Once these threshold matters are decided, the Court will set
> a further status conference to decide how to structure Phase II and
> the remaining causes of action for inverse condemnation, nuisance,
> and loss of lateral support."

On or about April 8, 2014, Plaintiffs filed a motion to amend their complaint to reflect the current status of the case and clarify their causes of action against Defendants. Also, on or about April 8, Plaintiffs filed a motion for a jury trial on their quiet title cause of action. Defendants opposed both motions.

On May 5, 2014, the trial court issued a minute order denying Plaintiffs' motion for leave to amend their complaint and motion for a jury trial on their quiet title cause of action. Regarding the motion to amend, the court stated: "The Court finds [P]laintiffs' request for leave to amend is untimely, [Plaintiffs] were dilatory in bringing the motion, the proposed amended complaint is procedurally improper, and will cause undue delay in

4

resolving this action, as [well] as prejudice to [D]efendants."  Regarding the motion for a jury trial, the court stated: "The Court finds the issue has been previously decided. Plaintiffs failed to sustain their burden to demonstrate why the Court should determine otherwise.  As such, the motion fails."

On June 26, Plaintiffs filed the instant petition for writ of mandate and/or prohibition and requested an immediate stay of the trial then scheduled to begin on September 12, 2014.  Defendants filed an informal response to the petition.  On August 14, we issued an order to show cause why the relief requested should not be granted.  We also stayed the trial scheduled for September 12, 2014, pending our further order.  We further provided that, absent Defendants' timely objection, their informal response would be deemed their return to the order to show cause.  Because Defendants thereafter waived their opportunity to object, we deem their informal response to be their return.  Plaintiffs filed a reply to Defendants' response.

## DISCUSSION

### I

*Order Denying Plaintiffs' Motion for a Jury Trial*

Plaintiffs contend the trial court erred by denying their motion for a jury trial on their quiet title cause of action.  They argue that because they are out-of-possession plaintiffs seeking recovery of possession of disputed property, they are entitled to a jury trial.

5

A

Plaintiffs' quiet title cause of action alleges the mean high tide line (MHTL) defines the boundary between their properties and Defendants' property, but Defendants dispute that boundary and assert the correct boundary is located as shown on Map No. 121, recorded with the San Diego County Recorder's Office on March 11, 1932, following the Spreckels judgment (Map 121).  Plaintiffs allege their properties include the portion of land lying seaward of the Map 121 line.  The first cause of action is titled "Establish Boundary and Quiet Title."  It alleges that "Defendants dispute and deny the true and correct boundary between Plaintiffs' and Defendants' property, and claim some right, title, estate, lien, or interest in and to the lands of the Plaintiffs, or a portion thereof. Defendants['] claim or claims are without any right whatever, and Defendants are without any right, title, estate, lien, or interest whatever."  Plaintiffs' complaint also alleges causes of action against only the State for nuisance, injunctive relief, and inverse condemnation arising out of damage caused by the Channel dredging projects.  Plaintiffs' complaint requests the following relief:

> "A.  That Defendants be required to set forth each and every claim they may assert in and to Plaintiffs' land and to the location of the boundary line set out above;

> "B.  That this Court *adjudge the true and correct location of the boundary line*;

> "C.  That *Plaintiffs' title in and to their lands be quieted* and that it be *adjudged that Plaintiffs are the owners in fee and entitled to possession of the lands*, that the *true and correct location of the boundary line between Plaintiffs' land and Defendants' land is as described in this Complaint*, and that none of the Defendants has any

6

right, title, estate, lien, or interest in or to the land of Plaintiffs, nor any portion thereof;

"D. That *Defendants*, and each of them, *be forever enjoined* and restrained *from claiming or asserting any claim or interest in or to Plaintiffs' land, or any portion thereof*, and from questioning, distributing [sic], or interfering with the boundary line hereinbefore set out in this complaint, or attempting so to do; . . . ."  (Italics added.)

In moving for a jury trial on their quiet title cause of action, Plaintiffs argued they are out-of-possession plaintiffs who seek to recover possession of their real property from Defendants and, therefore, under *Thomson v. Thomson* (1936) 7 Cal.2d 671, 681 (*Thomson*) and the California Constitution, they are entitled to a jury trial on that cause of action.

In opposing Plaintiffs' motion for a jury trial, Defendants argued the trial court had previously ruled (i.e., on Sept. 19, 2013) Plaintiffs were not entitled to a jury trial on their quiet title cause of action and they had made no showing to justify reconsideration of that order.  Defendants further argued that, in any event, Plaintiffs contest only ownership of the disputed property and ownership is an equitable issue for which they are not entitled to a jury trial.  Defendants argued that because Plaintiffs request the trial court adjudge the true and correct location of the boundary line, their quiet title action is an equitable claim and not an action at law.  Referring to Plaintiffs' then-pending motion for leave to amend their complaint, Defendants argued: "Only if the Court grants Plaintiffs' motion to amend *and* Plaintiffs establish title to the 'tide and submerged land covered by navigable waters,' does the issue of possession of such lands or damages in lieu of possession arise." Therefore, Defendants argued that because the issues of possession and monetary relief

7

were not yet ripe, Plaintiffs were not entitled to a jury trial on the question of the location of the boundary between their properties and Defendants' property.

The trial court denied Plaintiffs' motion for jury trial on their quiet title cause of action, finding the issue had been previously decided (i.e., in its Sept. 19, 2013, order granting Defendants' bifurcation motion).

B

The California Supreme Court has summarized a party's right to a jury trial in civil actions, stating:

> "The right to a jury trial is guaranteed by our Constitution. (Cal. Const, art. I, § 16.) . . . [T]he right so guaranteed, however, is the right as it existed at common law in 1850, when the Constitution was first adopted . . . . [Citations.] As a general proposition, '[T]he jury trial is a matter of right in a civil action at law, but not in equity.' [Citations.] [¶] . . . ' "If the action has to deal with ordinary common-law rights cognizable in courts of law, it is to that extent an action at law. In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the *gist* of the action. A jury trial must be granted where the *gist* of the action is legal, where the action is in reality cognizable at law." ' [Citation.] On the other hand, if the action is essentially one in equity and the relief sought 'depends upon the application of equitable doctrines,' the parties are not entitled to a jury trial. [Citations.] Although . . . 'the legal or equitable nature of a cause of action ordinarily is determined by the mode of relief to be afforded' [citation], the prayer for relief in a particular case is not conclusive [citations]." (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8-9.)

Declaratory relief actions generally, but not necessarily, are deemed equitable in nature. (See, e.g., *Interinsurance Exchange v. Savior* (1975) 51 Cal.App.3d 691, 694.) The proper inquiry is whether the *issues* raised in the action are legal or equitable in

8

nature.  (*Entin v. Superior Court* (2012) 208 Cal.App.4th 770, 777; *Manneck v. Lawyers Title Ins. Corp.* (1994) 28 Cal.App.4th 1294, 1300.)

Likewise, quiet title actions generally, but not necessarily, are deemed equitable in nature.  (*Estate of Phelps* (1990) 223 Cal.App.3d 332, 340.)  *Phelps* stated: "Generally, there is no right to a jury trial in a quiet title action which is fundamentally equitable in nature.  A quiet title action becomes a legal action when it takes on the character of an ejectment proceeding to recover possession of the property."  (*Ibid*.)  In *Thomson*, *supra*, 7 Cal.2d 671, the California Supreme Court set forth those categories of quiet title actions in which parties may or may not have a right to the jury trial, stating:

> "[Case law] establish[es] the following principles of law respecting the nature and character of an action to quiet title.
>
> "(1)  In a simple action to quiet title when the possession of the property is not involved, it is an equitable action.
>
> "(2)  When the right to possession is involved, the nature of the action, that is whether it is cognizable in an action at law, or in a court of equity, depends upon the following facts and circumstances.
>
> "(a)  If plaintiff is in possession and no claim is made that he has ousted the defendant of possession, the action is equitable and triable by the court without a jury.
>
> "(b)  If plaintiff is in possession and defendant by answer or complaint avers that he was recently ousted of possession of the property involved, the action is in reality one at law, and the parties thereto are entitled to a jury trial.
>
> "(c)  If the plaintiff is out of possession and seeks by an action to quiet title to recover possession, the action is triable in a court of law.
>
> "(d)  If plaintiff is in possession, and the defendant by answer or cross-complaint seeks to eject the plaintiff and recover possession,

9

the action involves both equitable and legal issues. The issues arising out of plaintiff's cause of action are equitable, and those resulting from defendant's answer and cross-complaint are legal. In such an action the plaintiff is entitled to have the equitable issues tried by the court without a jury, and the defendant is entitled to have the legal issues submitted to a jury." (*Thomson*, *supra*, 7 Cal.2d at p. 681.)

Equitable issues are to be resolved by the trial court without a jury (i.e., in a bench trial). (*Arciero Ranches v. Meza* (1993) 17 Cal.App.4th 114, 124.) "[W]here legal and equitable issues are joined in the same action[,] the parties are entitled to a jury trial on the legal issues." (*Robinson v. Puls* (1946) 28 Cal.2d 664, 665-666.) Ordinarily, "the equitable issues are [to be] tried first and then, if any legal issues remain, a jury may be called." (*Connell v. Bowes* (1942) 19 Cal.2d 870, 872.)

C

Assuming arguendo Plaintiffs' motion for a jury trial and the instant petition were timely filed, we conclude the trial court properly denied their motion for a jury trial.[2]

---

[2] We note there may be merit to Defendants' argument and the trial court's ruling that the court had previously determined the question of whether Plaintiffs are entitled to a jury trial on the issue of the location of the boundary lines when on September 19, 2013, the court granted Defendants' motion to bifurcate the trial and stated: "Phase I should consist of a bench trial on the determination of Plaintiffs' property boundaries for purposes of quieting title . . . ." Plaintiffs did not timely file a motion for reconsideration under Code of Civil Procedure section 1008 and did not otherwise challenge that decision until they filed their motion for a jury trial on April 8, 2014. We note Plaintiffs did not file in this court any petition for writ of mandate and/or prohibition challenging the trial court's September 19, 2013, order deciding that it would conduct a bench trial on the boundary determination issue. In general, writ petitions must be filed within the period applicable were the trial court's decision to be challenged by appeal (i.e., generally within 60 days after the decision). (See, e.g., *Cal West Nurseries v. Superior Court* (2005) 129 Cal.App.4th 1170, 1173; *People v. Superior Court* (*Brent*) (1992) 2 Cal.App.4th 675,

10

Based on our review of Plaintiffs' quiet title cause of action, their request for a determination of the location of the boundary lines between Plaintiffs' properties and Defendants' property is *not*, in effect, an ejectment proceeding or other action to recover possession of property from Defendants. Absent the application of that exception to the general rule that quiet title actions are equitable in nature, Plaintiffs are *not* entitled to a jury trial on the issue of their quiet title cause of action.

The gist of Plaintiffs' quiet title cause of action is a request for a determination of the boundary lines between Plaintiffs' properties and Defendants' property. Plaintiffs allege their properties include the portion of land lying seaward of the Map 121 line up to the MHTL. Because Defendants claim a right, title, or interest in or to that portion of land, Plaintiffs seek a determination of the correct boundary lines and a judgment quieting their title to that land. Their complaint requests that the trial court "*adjudge the true and correct location of the boundary line*." (Italics added.) Plaintiffs' request is, in effect, for *declaratory relief* (i.e., a declaration that the correct boundary line is the MHTL and not the upland Map 121 line as Defendants assert). Because the gist of Plaintiffs' quiet title action is for declaratory relief and not ejectment of Defendants, their action is equitable in nature and the general rule disallowing a jury trial applies. Furthermore, Plaintiffs seek injunctive relief enjoining Defendants from asserting any claim to the disputed land, which relief is equitable in nature and therefore does not entitle Plaintiffs to a jury trial. Accordingly, Plaintiffs are *not* entitled to a jury trial on

682.) However, for purposes of our opinion, we assume arguendo Plaintiffs may challenge the trial court's May 5, 2014, order denying their motion for a jury trial.

11

the issue of the correct location of the boundary line(s) between their properties and Defendants' property.  (*C & K Engineering Contractors v. Amber Steel Co.*, *supra*, 23 Cal.3d at pp. 8-9; *Interinsurance Exchange v. Savior*, *supra*, 51 Cal.App.3d at p. 694; *Entin v. Superior Court*, *supra*, 208 Cal.App.4th at p. 777; *Manneck v. Lawyers Title Ins. Corp.*, *supra*, 28 Cal.App.4th at p. 1300; *Estate of Phelps*, *supra*, 223 Cal.App.3d at p. 340.)

To the extent Plaintiffs argue they are entitled to a jury trial on their quiet title cause of action under *Thomson*'s rules, we conclude Plaintiffs misinterpret and/or misapply those rules.  Plaintiffs argue they are entitled to a jury trial because they are out of possession and seek to recover possession of property through their quiet title action.  (*Thomson*, *supra*, 7 Cal.2d at p. 681.)  However, their complaint does not allege Defendants possess any of the disputed property.  On the contrary, their allegations support reasonable inferences that Plaintiffs were in possession of the disputed land before and at the time they filed their action and they seek a declaration that they, and not Defendants, have all right, title, and interest in and to that land.  To the extent possession is involved in this action, Plaintiffs' quiet title action is most appropriately classified under *Thomson*'s category 2(a), i.e., "[i]f plaintiff is in possession and no claim is made that he has ousted the defendant of possession, the action is equitable and triable by the court without a jury."  (*Ibid.*; cf. *Cobe v. Crane* (1916) 173 Cal. 116, 120 ["Appellants further complain that they were denied a trial by jury.  Plaintiff's complaint was not that of a plaintiff out of possession seeking to recover possession.  His action was one simply to quiet title.  The evidence showed that plaintiff was in possession.  The judgment makes

12

no mention of possession. Of course, defendants were not entitled to a jury trial under these circumstances.]".) To the extent Plaintiffs now argue they are somehow "out of possession" regarding the disputed land and seek recovery of possession, their argument is not supported by the factual allegations and relief requested in their quiet title complaint. Plaintiffs "cannot by merely [arguing they were] ejected from said real property by [Defendants], convert the action to quiet title . . . into an action for possession and thus oust the court of its equitable jurisdiction . . . ." (*Thomson*, *supra*, 7 Cal.2d at p. 682.)

Furthermore, even if Plaintiffs subsequently amend their complaint substantially as discussed below, we nevertheless conclude they are not entitled to a jury trial on the issue of the determination of the correct location of the boundary lines between their properties and Defendants' property. If Plaintiffs allege the Spreckels judgment does not have a res judicata effect and the true boundary is the last natural MHTL before artificial improvements changed the shoreline of their properties, the gist of their quiet title action remains an equitable action for a declaration of the correct location of the boundary lines between their properties and Defendants' property. In the event the trial court determines res judicata does not apply, the court presumably will receive evidence on the question of whether artificial improvements changed the shoreline of Plaintiffs' properties, and, if so, when they did so and where the last natural MHTL existed at that time. We cannot speculate how those questions of fact will be resolved, but nevertheless conclude Plaintiffs' request for a determination of the correct location of the boundary lines would

13

continue to be a request for declaratory relief, which is equitable in nature and does not provide them with a right to a jury trial.

Plaintiffs may argue and present evidence supporting a finding that the last natural MHTL extends into Bay beyond its current MHTL and therefore they have a right to compensation for their inability to own and/or possess such tideland and/or submerged land. In that event, Plaintiffs would not be entitled to a jury trial on the first question of fact (i.e., the determination of the correct location of the boundary lines between their properties and Defendants' property), but presumably would be entitled to a jury trial on the question of what damages, if any, they should be awarded for their inability to own or possess their one-time upland property that subsequently became submerged land and/or tideland because of artificial improvements in the immediate vicinity of their prior shorelines. In that event, the trial court presumably would conduct a bifurcated trial on Plaintiffs' quiet title cause of action. It would first conduct a bench trial on the issue of whether the Spreckels judgment has a res judicata effect and, if not, where the correct location of the boundary lines between Plaintiffs' properties and Defendants' property is. After that bench trial, if the court has determined the correct location of the boundary lines is other than Map 121 per the Spreckels judgment and is, in fact, in Bay's submerged land and/or tideland, then the court may conduct a jury trial on the issue of what damages, if any, Plaintiffs should be awarded for their inability to own or possess

14

that submerged land and/or tideland.[3]  The trial court correctly concluded Plaintiffs are not entitled to a jury trial on the issue of the correct location of the boundary lines between their properties and Defendants' property.

II

*Order Denying Plaintiffs' Motion to Amend Their Complaint*

Plaintiffs contend the trial court abused its discretion by denying their motion to amend their complaint.

A

In April 2014, Plaintiffs filed a motion to amend their complaint to reflect the current status of the case and clarify their causes of action against Defendants.  They sought leave to file a third amended complaint, consolidating their second amended complaint and quiet title complaint and containing amendments in three categories: (1) amendments to reflect the current case status; (2) amendments to clarify allegations pertaining to the "Phase I" cause of action (i.e., for quiet title); and (3) amendments to clarify allegations pertaining to the "Phase II" causes of action (i.e., for inverse condemnation, nuisance, and removal of lateral support).  According to the supporting declaration of Tiffany Cale, one of Plaintiffs' attorneys, "[n]umerous events have taken place in the six or more years since the operative pleadings were filed:  1) four plaintiffs, Plaintiffs William and Heidi Dickerson and Larry and Penelope Gunning, have joined the

_____

[3]     For purposes of this opinion, we need not address what defenses, if any, Defendants may have to Plaintiffs' request for compensatory or other monetary damages (e.g., statute of limitations, laches, etc.).

15

litigation and withdrawn; 2) two plaintiffs, Plaintiffs Captain and Barbara Sewall ('Sewall'), have died and trustees have been substituted on their behalf; 3) two plaintiffs, the Sewall trustees and Ann Goodfellow, have sold their homes; 4) federal claims under the Administrative Procedures Act asserted against the Army Corps of Engineers and United States Navy have been adjudicated and final judgment has been entered; 5) Sewall's quiet title claim has been adjudicated and final judgment has been entered; 6) the Court of Appeal has issued a comprehensive 115-page opinion clarifying the applicable law; and 7) the parties have engaged in substantial discovery."

Plaintiffs submitted a copy of their 29-page proposed third amended consolidated complaint, alleging causes of action for (1) quiet title; (2) inverse condemnation; (3) nuisance; and (4) removal of lateral support. It alleges that on December 30, 2013, Goodfellow conveyed its property at 409 First Street, Coronado, to the Arendsee Allan Family Trust and Arendsee Lyndsey Family Trust. It also alleges that on October 8, 2012, Sewall conveyed its property at 311 First Street, Coronado, to Carlos Alberto Rojo Macedo. Importantly for purposes of this petition, Plaintiffs propose to amend their allegations relating to their quiet title cause of action to recognize our opinion in *SLPR I* and allege the Spreckels judgment does not have a res judicata effect on the location of their boundary lines. They further propose to allege that beginning in the mid-1800's, "various human activities . . . altered the natural location of the [MHTL] in [Bay]. As a result, the [MHTL] became 'fixed' at its last natural location prior to these artificial activities." Based on those and other proposed allegations, Plaintiffs' quiet title cause of action would allege that they "seek a determination of their title against Defendants'

16

adverse claims as of the date the complaint was filed, March 5, 2008." Their proposed third amended consolidated complaint would seek the same relief as their current complaints seek and would add a request for an award of damages, requesting: "[T]o the extent that it is not feasible for Plaintiffs to take possession of any of the land quieted in their favor by this action, damages to compensate Plaintiffs for their inability to take physical possession of such land." Their proposed amended complaint would also amend allegations in their remaining causes of action to reflect our opinion in *SLPR I*.

Defendants opposed Plaintiffs' motion to amend their complaint, arguing Plaintiffs inexcusably delayed in seeking leave to amend their complaint, there has been no discovery on Plaintiffs' theory of a fixed MHTL based on artificial improvements, and they (Defendants) would be prejudiced by the proposed amendment. They further argued Cale's declaration, submitted in support of Plaintiffs' motion to amend, did not comply with the requirements of California Rules of Court rule 3.1324(b).[4]

On May 5, 2014, the trial court issued a minute order denying Plaintiffs' motion for leave to amend their complaint, stating: "The Court finds [P]laintiffs' request for leave to amend is untimely, [Plaintiffs] were dilatory in bringing the motion, the proposed amended complaint is procedurally improper, and will cause undue delay in resolving this action, as [well] as prejudice to [D]efendants."

---

4       All references to rules are to the California Rules of Court.

B

" '[T]he trial court has wide discretion in allowing the amendment of any pleading [citations], [and] as a matter of policy the ruling of the trial court in such matters will be upheld unless a manifest or gross abuse of discretion is shown.  [Citations.]' "  (*Record v. Reason* (1999) 73 Cal.App.4th 472, 486.)  However, in exercising that discretion, "[c]ourts must apply a policy of great liberality in permitting amendments to the complaint at any stage of the proceedings, up to and including trial, when no prejudice is shown to the adverse party."  (*Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 746.)  Nevertheless, "[t]he law is also clear that even if a good amendment is proposed in proper form, unwarranted delay in presenting it may—of itself—be a valid reason for denial. The cases indicate that the denial may rest upon the element of lack of diligence in offering the amendment after knowledge of the facts, or the effect of the delay on the adverse party [citations]."  (*Roemer v. Retail Credit Co.* (1975) 44 Cal.App.3d 926, 939-940; see *Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1377 (*Duchrow*); *P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1345; *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175; *Huff*, at p. 746; *Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1097; *Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 613.)  Alternatively stated, "a long deferred presentation of the proposed amendment without a showing of excuse for the delay is itself a significant factor to uphold the trial court's denial of the amendment [citation]."  (*Bedolla v. Logan & Frazer* (1975) 52 Cal.App.3d 118, 136.)  "Thus, appellate courts are less likely to find an abuse of discretion where, for

18

example, the proposed amendment is ' "offered after long unexplained delay . . . or where there is a lack of diligence . . . ." ' " (*Melican*, at p. 175.)

" 'The cases on amended pleadings during trial suggest trial courts should be guided by two general principles: (1) whether facts or legal theories are being changed and (2) whether the opposing party will be prejudiced by the proposed amendment. Frequently, each principle represents a different side of the same coin:  If new facts are being alleged, prejudice may easily result because of the inability of the other party to investigate the validity of the factual allegations while engaged in trial or to call rebuttal witnesses.  If the same set of facts supports merely a different theory . . . no prejudice can result.' [Citation.]  'The basic rule applicable to amendments to conform to proof is that the amended pleading must be based upon the same general set of facts as those upon which the cause of action or defense as originally pleaded was grounded.' " (*Garcia v. Roberts* (2009) 173 Cal.App.4th 900, 910.)  "As stated by a leading treatise, in ruling on a motion to amend a complaint to conform to proof, 'the court is usually guided by whether: [¶] . . . there is a *reasonable excuse* for the delay . . . ; [¶] . . . the change relates to the *facts* or only to legal theories; and [¶] . . . the opposing party will be *prejudiced* by the amendment.' " (*Duchrow*, *supra*, 215 Cal.App.4th at pp. 1378-1379.)  On appeal, the burden is on the plaintiff to demonstrate the trial court abused its discretion by denying a motion for leave to amend the complaint.  (*Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 945.)

## C

We conclude the reasons cited by the trial court for denying Plaintiffs' motion to amend their complaint are not supported by the record or applicable case law and therefore the court abused its discretion. There is no evidence showing the Plaintiffs' delay in filing their motion was undue or that Defendants would be prejudiced were the court to grant Plaintiffs' motion. The general rule liberally allowing a plaintiff to amend a complaint should have been applied by the court. (*Huff v. Wilkins*, *supra*, 138 Cal.App.4th at p. 746.)

*Purported undue delay*. In denying Plaintiffs' motion to amend their complaint, the trial court found their motion was "untimely," Plaintiffs were "dilatory in bringing the motion," and the amendment would cause undue delay in resolving this action. Addressing the first ground, we conclude neither the record nor applicable law shows Plaintiffs' motion to amend was untimely. Although we presume Plaintiffs could have acted more promptly by filing the motion to amend their complaint prior to April 2014, the trial date for "Phase I" (i.e., the quiet title bench trial) at that time was set for September 2014--five months later--and the trial date for "Phase II" (i.e., all other causes of action and issues) had not yet been set. Defendants do not cite any statute, rule, or case showing that a motion for leave to amend filed at least five months in advance of a scheduled trial is necessarily untimely. On the contrary, absent a showing of prejudice to the defendant, case law holds that a plaintiff's pretrial motion for leave to amend a complaint is generally considered timely and should be granted. (*Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 761.)

20

Furthermore, Plaintiffs explained below the reasons for the delay in moving to amend their complaint. In Cale's supporting declaration, paraphrased in Plaintiffs' motion papers, she stated numerous events had taken place in the six or more years since their complaint was filed, including the addition and withdrawal of four plaintiffs, the substitution of trustees for two deceased plaintiffs, the sale of homes by two plaintiffs, the final adjudication of their federal claims under the Administrative Procedures Act asserted against the Army and Navy, the issuance of our opinion in *SLPR I* that clarified applicable law, and substantial discovery conducted by the parties. Considering the sales of the homes of two plaintiffs in October 2012 and December 2013 and the other reasons cited by Plaintiffs, as well as the fact that the case (at least in part) was removed to the federal court from June 2006 through October 2009 and was on appeal in this court beginning in June 2011 and not remitted to the trial court after *SLPR I* until February 2013, we conclude Plaintiffs provided sufficient reasons for the delay in filing the motion to amend their complaint and, absent a showing of prejudice to Defendants caused by such delay, it would be an abuse of discretion to deny their motion to amend. Contrary to Defendants' assertion, Plaintiffs' delay was not, in and of itself, sufficient grounds to deny their motion to amend in the circumstances of this case. (Cf. *P&D Consultants, Inc. v. City of Carlsbad*, *supra*, 190 Cal.App.4th at pp. 1345 [upheld denial of motion to amend because plaintiff failed to explain 10-month delay in seeking to amend complaint to add two new causes of action].)

*Purported prejudice.* In denying Plaintiffs' motion to amend their complaint, the trial court also concluded Defendants would be prejudiced if it allowed them (Plaintiffs)

21

to amend their complaint. However, the court did not specify what undue prejudice Defendants would suffer from the proposed amendments or the delay in moving to amend. In their return to the instant petition, Defendants argue Plaintiffs' proposed amendments would dramatically change the case. However, the proposed amendments would not add any new causes of action, nor would they change the basic underlying facts of the complaint.

To the extent, as Defendants argue, Plaintiffs seek a determination that the correct location of their boundary lines is on submerged land in Bay beyond the natural MHTL because of prior artificial improvements in the immediate vicinity of their properties, that legal theory does not change the basic facts alleged but only their legal theory regarding the true boundary lines. As such, Defendants would not be prejudiced by that proposed amendment. (*Garcia v. Roberts*, *supra*, 173 Cal.App.4th at p. 910; *Duchrow*, *supra*, 215 Cal.App.4th at pp. 1378-1379.) Furthermore, as Plaintiffs assert, Defendants have been aware of that legal theory since at least 2010 when Plaintiffs submitted the declaration of Michael Pallamary, their surveyor expert, in support of their motion for summary adjudication. In his declaration, Pallamary stated that Bay had been impacted by many artificial changes and influences beginning in the mid-1800's. He opined that 1859 was the year in which Bay was last documented in its natural state and, based on such documentation, he concluded the MHTL adjacent to Plaintiffs' properties in 1859 was located about 400 feet bayward of the Map 121 line (i.e., on submerged land in Bay). Per Plaintiffs' representation, Defendants have deposed Pallamary on at least two occasions since his 2010 declaration. Also since 2010, Defendants submitted the declaration of

22

their own surveyor expert, Steve Lehman, in opposition to Plaintiffs' motion for summary adjudication. In his declaration, Lehman refutes Pallamary's opinion and concludes, instead, that the last natural MHTL of Bay existed in about 1945. Therefore, Defendants have not been surprised in the past, and could not be unfairly surprised or otherwise disadvantaged by Plaintiffs' proposed amendments to the complaint, or by Plaintiffs' legal theory that the boundary lines should be located where the last natural MHTL was (i.e., in 1859) before artificial improvements changed the shoreline. In any event, to the extent Defendants may be disadvantaged by any "late" notice of Plaintiffs' legal theory and the evidence on which they rely, the trial court could exercise its discretion to continue the trial date and allow Defendants time to investigate that theory and conduct further discovery.

Furthermore, although Plaintiffs' proposed amendments include a request for an award of monetary damages for their inability to possess submerged lands and/or tidelands, that requested relief does not change their underlying factual allegations, but only the types of relief Plaintiffs request based on their legal theory or theories. Under Plaintiffs' current quiet title cause of action, they request a declaration regarding the correct location of their boundary lines; a declaration they are the owners of and entitled to possession of their land and that Defendants have no right, title, or interest in or to that land; and an injunction enjoining Defendants from asserting any claim to or interest in Plaintiffs' land and interfering with the boundary lines. In comparison, under Plaintiffs' proposed amended quiet title cause of action, they would maintain their requests for the same declaratory and injunctive relief as before and add a request for compensatory

23

damages to the extent they cannot take physical possession of land quieted in their favor. We conclude Defendants would not be unfairly surprised by the addition of that requested relief given that they have been aware of Plaintiffs' boundary line theory since 2010. To the extent Plaintiffs' legal theory may also apply to their inverse condemnation cause of action, we similarly conclude Defendants would not be unfairly surprised by that requested relief. Furthermore, to the extent the trial court finds Defendants require additional time to prepare a defense to Plaintiffs' request for damages, it could continue the trial date for that issue rather than deny leave to amend their complaint to add that requested relief.

Although Defendants argue they have devoted significant time and resources since 2008 litigating the case as currently pleaded, that devotion of time and resources does not amount to such prejudice as to preclude Plaintiffs from amending their complaint to modify the legal theory underlying their quiet title cause of action. As discussed above, Defendants have been aware since 2010 of Plaintiffs' artificial improvements theory for determination of the location of their boundary lines. If Defendants are not prepared to defend against that theory, the trial court may reopen discovery on that issue and/or continue the trial date for that issue. Furthermore, although Defendants argue Plaintiffs' amendments would entitle Defendants to demur to the amended complaint, move for judgment on the pleadings, and move again for summary judgment, which challenges would require "well over a year to complete," that possible delay is relatively insubstantial when compared to the rather long and complex procedural history of this case since Plaintiffs filed their original complaint in 2006. Accordingly, that possible

24

delay is insufficient to show Defendants would be prejudiced by Plaintiffs' third amended consolidated complaint. We further disagree with Defendants' assertion that allowing Plaintiffs to amend their complaint "would result in the case basically starting over." Based on our review of the record, it appears the parties have been engaged in discovery and other actions preparing for trial and therefore we believe Plaintiffs' proposed amendments would not result in any undue delay of the trial(s) on their causes of action.

Furthermore, contrary to Defendants' assertion, Plaintiffs' purported lack of compliance with rule 3.1324(b) should not preclude them from amending their complaint. Rule 3.1324(b) provides:

> "A separate declaration must accompany the motion [to amend a pleading before trial] and must specify:
>
> "(1)  The effect of the amendment;
>
> "(2)  Why the amendment is necessary and proper;
>
> "(3)  When the facts giving rise to the amended allegations were discovered; and
>
> "(4)  The reasons why the request for amendment was not made earlier."

Defendants argued below that Plaintiffs did not provide a supporting declaration that satisfied each of those four requirements for a motion to amend.

In denying Plaintiffs' motion to amend, the trial court did not expressly find Plaintiffs violated rule 3.1324(b), but instead found "the proposed amended complaint is procedurally improper." Neither the court nor Defendants specify how Plaintiffs' proposed third amended consolidated *complaint* is procedurally improper. Nevertheless,

25

to the extent the court intended to instead find that Plaintiffs' *motion* to amend their complaint was procedurally improper and, in particular, violated rule 3.1324(b), we agree Plaintiffs' motion papers did not fully comply with that rule. Cale's initial declaration, submitted in support of Plaintiffs' motion to amend, attached numerous documents reflecting the procedural history of the case, described events that had occurred since Plaintiffs' operative pleadings were filed, stated Pallamary had first concluded in November 2010 that the correct location of the boundary lines was the MHTL at its last natural location and significant discovery had since been conducted on that issue, and stated Defendants had known since November 2013 that Plaintiffs would be seeking damages as an alternative form of relief on their quiet title cause of action. Cale's subsequent declaration in support of Plaintiffs' motion to amend included additional information regarding the case, but not all of the information required by rule 3.1324(b). Because those declarations did not expressly address all of the issues set forth in each of the four requirements of rule 3.1324(b), Plaintiffs' motion to amend did not comply with that rule's requirements. Nevertheless, we believe Plaintiffs' motion to amend, filed months before the scheduled trial date, should not be denied or forever barred because their motion did not initially comply with all procedural rules. (Cf. *Bettencourt v. Hennessy Industries, Inc.* (2012) 205 Cal.App.4th 1103, 1111 [trial court abuses its discretion by denying leave to amend complaint when there is a reasonable possibility the defect could be cured by amendment]; *Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1402 [same].) Defendants do not cite any case or other authority so concluding. After issuance of the writ described below, the trial court shall give

Plaintiffs 30 days to file an amended declaration in support of the motion for leave to amend their complaint that complies with the requirements of rule 3.1324(b).

DISPOSITION

Let a peremptory writ issue directing the superior court to vacate its May 5, 2014, order denying Plaintiffs' motion to amend their complaint, and enter a new order granting Plaintiffs 30 days to file an amended declaration in support of the motion for leave to amend their complaint that complies with California Rules of Court rule 3.1324(b).  In the event Plaintiffs timely file an amended declaration that substantially complies with rule 3.1324(b), the superior court shall grant the motion to amend their complaint.  In the event Plaintiffs do not timely file an amended declaration that substantially complies with rule 3.1324(b) in support of their motion, the court may, in the exercise of its reasonable discretion, deny their motion to amend.  In all other respects, the petition is denied.  The stay issued by this court on August 14, 2014, is vacated.  The parties are to bear their own costs in the writ proceeding.  (Cal. Rules of Court, rule 8.493(a)(1)(B).)

McDONALD, J.

WE CONCUR:

McCONNELL, P. J.

McINTYRE, J.